# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| THE BLAKE AT CARNES CROSSROADS, ) <br> LLC and BLAKE MANAGEMENT ) <br> GROUP, LLC, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> WILLIAM J. GRIMSLEY, *as personal* ) <br> *representative of the estate of Betty Grimsley*, ) <br> ) <br> Defendant. ) <br> _____) | No. 2:21-cv-01170-DCN <br><br> **ORDER** |

The following matter is before the court on defendant William J. Grimsley's ("Grimsley") motion to dismiss, ECF No. 13. For the reasons set forth below, the court grants the motion and dismisses the action.

## I. BACKGROUND

Plaintiff The Blake at Carnes Crossroads, LLC ("The Blake") owns a residential care facility in Berkeley County, South Carolina that is operated and managed by plaintiff Blake Management Group, LLC ("BMG") (together with The Blake, the "Blake plaintiffs"). Betty Grimsley (the "decedent") was admitted to The Blake on or about November 26, 2019. During the admission process, the decedent's son,[1] Grimsley, signed a contract to obtain care, residency, and treatment for the decedent (the "Admission Agreement"). By signing the Admission Agreement, Grimsley agreed that

---

[1] The complaint alleges that Grimsley was the decedent's husband. However, both Grimsley's motion to dismiss and the Blake plaintiffs' response refer to Grimsley as the decedent's son. This discrepancy is immaterial to the court's review of the instant motion.

1

arbitration was the exclusive remedy for resolving "[a]ny legal controversy, dispute, disagreement or claim . . . arising out of or relating to (1) th[e] Admission Agreement; (2) any service or health care provided by [The Blake] to [the decedent]; and/or (3) any matter related to the [decedent]'s stay . . . ." (the "Arbitration Agreement"). ECF No. 1-1 at 17. During her stay at The Blake, the decedent allegedly fell on multiple occasions and suffered multiple injuries. One such fall occurred on June 27, 2020 and resulted in a pelvic fracture that led to an immediate decline in her health. The decedent died on or about July 3, 2020.

On December 30, 2020, Grimsley, as personal representative of the estate of the decedent, filed a civil action in the Berkeley County Court of Common Pleas against The Blake and Crystal Tate ("Tate"), the administrator of The Blake, (the "State Action") asserting various causes of action including negligence and wrongful death. See Grimsley ex rel. Grimsley v. The Blake at Carnes Crossroads, LLC, No. 2020-CP-08-02753 (S.C. Com. Pl. Dec. 30, 2020). On April 20, 2021, the Blake plaintiffs filed the instant action to compel arbitration and stay the State Action. ECF No. 1, Compl. On June 25, 2021, Grimsley filed a motion to dismiss the action for lack of subject matter jurisdiction. ECF No. 13. On July 16, 2021, the Blake plaintiffs responded in opposition, ECF No. 16, and on June 22, 2021, Grimsley replied, ECF No. 17. As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for "lack of subject-matter jurisdiction." The determination of subject matter jurisdiction must be made at the outset before any determination on the merits. Steel Co. v. Citizens

for a Better Env't, 523 U.S. 83, 91 (1998). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff cannot overcome this burden, the claim must be dismissed. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). In ruling on a Rule 12(b)(1) motion, "the court may consider exhibits outside the pleadings" and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williams, 50 F.3d at 304 (internal citations and quotations omitted).

The Federal Arbitration Act ("FAA") provides that a petition to compel arbitration pursuant to an arbitration agreement may be brought in "any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. The Supreme Court established that the FAA itself "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Vaden v. Discovery Bank, 556 U.S. 49, 59 (2009) (quoting Hall Street Assocs. v. Mattel, Inc., 552 U.S. 576, 581–82 (2008)) (internal quotation marks omitted). Therefore, "subject matter jurisdiction for an FAA claim . . . must rest on some basis independent of the FAA," Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991), whether it be "diversity of citizenship or some other independent basis for federal jurisdiction," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983).

In other words, the "party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." Vaden, 556 U.S. at

66. To determine whether federal-question jurisdiction exists, the court must look to the allegations in the underlying dispute, rather than those in the petition. Id. at 67.

### III.   DISCUSSION

Grimsley argues that the court lacks subject matter jurisdiction over the instant action. The Blake plaintiffs argue that the court is vested with subject matter jurisdiction over the action pursuant to both 28 U.S.C. § 1332(a) and 28 U.S.C. § 1331. The court discusses each of these claimed bases of jurisdiction in turn below, ultimately finding both lacking.

**A.   28 U.S.C. § 1332(a)**

The Blake plaintiffs first claim diversity of citizenship as a ground for federal jurisdiction pursuant to 28 U.S.C. § 1332. For a court to have jurisdiction over an action under § 1332(a), "diversity must be complete such that the state of citizenship of each plaintiff must be different from that of each defendant." Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 432 (4th Cir. 2014) (internal quotation marks and citation omitted). For purposes of diversity jurisdiction, the citizenship of a limited liability company, such as each of the Blake plaintiffs, is determined by the citizenship of all of its members. Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004). The complaint alleges that The Blake is a Delaware limited liability company and no member of The Blake is a citizen or resident of South Carolina. It further alleges that BMG is a Mississippi limited liability company, and no member of BMG is a citizen or resident of South Carolina. Grimsley is a citizen and resident of South Carolina. Therefore, as pled, the parties are completely diverse.

Grimsley does not dispute that complete diversity exists between the named parties in this action. However, Grimsley argues that the Blake plaintiffs failed to include Tate in this action in an attempt to circumvent federal diversity requirements. As previously mentioned, Grimsley named Tate, the administrator of The Blake, as a defendant in the State Action. Grimsley maintains that Tate is a necessary and indispensable party in this action under Federal Rule of Civil Procedure 19, and the court agrees.

Under Rule 19, a district court must dismiss an action brought in diversity jurisdiction if a nondiverse, non-joined party is "necessary" and "indispensable" to the action. Home Buyers Warranty Corp., 750 F.3d at 433. In deciding whether to dismiss an action, Rule 19 is to be applied "pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it." Id. (internal quotation marks and citation omitted). Among other scenarios provided in Rule 19, a party is necessary to an action where "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Four factors control whether a necessary party is indispensable: (1) "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided"; (3) "whether a judgment rendered in the person's absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b); see Home Buyers Warranty

Corp., 750 F.3d at 435–36; Tough Mudder, LLC v. Sengupta, 614 F. App'x 643, 645 (4th Cir. 2015).

In Tough Mudder, a plaintiff filed a wrongful death claim in state court against those allegedly responsible for her husband's death in an obstacle race. 614 F. App'x at 644. She included as a defendant a non-diverse party—the medic who pulled the deceased husband from the water. Id. Defendants filed a federal court petition to compel arbitration, asserting diversity jurisdiction and failing to name the non-diverse medic as a party. Id. The district court held that the medic was a necessary and indispensable party and dismissed the federal claim. Id. at 646. The Fourth Circuit affirmed, explaining that the district court did not abuse its discretion in so finding because (1) the medic was a defendant in the underlying state action seeking to compel arbitration in that action and therefore had an interest in the validity of the arbitration provision; and (2) the plaintiff in the underlying state action "faced the substantial risk of inconsistent results regarding the validity of the arbitration provision, potentially causing her to simultaneously pursue her claims through arbitration and trial." Id. at 645.

Like the medic in Tough Mudder, here, Tate is a defendant in the underlying State Action seeking to compel arbitration of that action.[2] As such, Tate has an interest in the validity of the Arbitration Agreement. See Home Buyers Warranty Corp., 750 F.3d at 434–35 (finding that an absent party had an interest in a petition to compel arbitration where it also had a right to demand arbitration); Owens-Illinois, Inc. v. Meade, 186 F.3d

---

[2] Tate, together with The Blake, filed a motion to compel arbitration in the State Action on February 11, 2021. See State Action, Defs.' Mot. to Dismiss at 1. The court may take judicial notice of the public docket. See Fed. R. Evid. 201(b); Whitt v. Wells Fargo Fin., Inc., 664 F. Supp. 2d 537, 542 (D.S.C. 2009) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.").

435, 441 (4th Cir. 1999) (holding that non-diverse parties in an underlying state action who were omitted from a petition to compel arbitration but subject to the same arbitration provision were necessary parties); Cytec Indus., Inc. v. Powell, 630 F. Supp. 2d 680, 686 (N.D. W. Va.2009) (finding that an absent party had an interest in a petition to compel arbitration because it sought to compel arbitration in an underlying state case). Concurrent state and federal proceedings concerning the arbitrability of Grimsley's claims create a "high likelihood" that one or more of the parties will face inconsistent obligations. See Home Buyers Warranty Corp., 750 F.3d at 434; see also Owens–Illinois, Inc., 186 F.3d at 441; Cytec Indus., Inc., 630 F. Supp. 2d at 686. Indeed, if this action proceeds, this court will need to determine whether the Arbitration Agreement is enforceable and, because Tate has filed a motion demanding arbitration in the State Action, the state court will face the same task. In that event, one court might compel arbitration on the basis of the Arbitration Agreement, while the other does not. "The Fourth Circuit has consistently held that the risk of differing interpretations of an arbitration provision in this situation justifies having one tribunal with all of the affected parties before it hear the matter." Tough Mudder, LLC v. Sengupta, 2014 WL 4954657, at *4 (N.D. W. Va. Oct. 2, 2014), aff'd, 614 F. App'x 643 (4th Cir. 2015); see Home Buyers Warranty Corp., 750 F.3d at 434; Owens–Illinois, Inc., 186 F.3d at 441 ("This potential for factual and legal 'whip-saw' weighs heavily in favor of having one court adjudicate the entire case with all of the affected parties before it."). Thus, Tate is a necessary party under Rule 19(a)(1)(B)(ii).

    Having concluded that Tate is a necessary party, and because her joinder would destroy diversity, the court must determine whether she is indispensable using the factors

7

enumerated in Rule 19(b).  Consideration of the first and third factors under the rule—the extent to which a judgment rendered in the person's absence might prejudice the parties or would be adequate—address similar concerns as the Rule 19(a)(1)(B) analysis.  See Owens–Illinois, Inc., 186 F.3d at 441–42 (noting that first and third factors of indispensable evaluation "address much the same concerns as under the Rule 19(a)[(1)(B)] analysis").  As previously discussed, Grimsley would be prejudiced if he is forced to pursue his claims against Tate in state court but arbitrate those same claims against the Blake plaintiffs.  As to the second factor, no remedy fashioned by the court would lessen, or avoid altogether, the prejudice Grimsley would face due to Tate's absence from the case.  Finally, with respect to the fourth factor, the Berkeley County Court of Common Pleas is more than capable of rendering an adequate and fair judgment in this matter.  With all four factors supporting a finding of indispensability, the court cannot allow this case to proceed in Tate's absence.

The Blake plaintiffs cite decisions from this district that predate Tough Mudder for the proposition that "merely being an alleged tortfeasor in an underlying action does not render a party necessary and indispensable to a separate, federal action to compel arbitration."  ECF No. 16 at 6 (citing THI of S.C. at Charleston, LLC v. Vance, 2013 WL 10178817 (D.S.C. Oct. 9, 2013)).  The Blake plaintiffs are correct that "[c]ourts have held that nursing home administrators are not necessary parties under Rule 19 when another alleged joint tortfeasor seeks to compel arbitration under the FAA."  THI of S.C. at Rock Hill, LLC v. White, 2012 WL 5408318 (D.S.C. Nov. 6, 2012).  However, the court is satisfied that it should reach a different conclusion in this case for two reasons.  First, in the cases cited by the Blake plaintiffs, the non-joined parties did not take any

action to compel arbitration of the underlying claims, such that their interest in any decision regarding the arbitration agreements at issue was nebulous and the risk of conflicting interpretations of those agreements was lower. See, e.g., White, 2012 WL 5408318, at *4 (distinguishing the case from Owens–Illinois, Inc. by the fact that the non-joined party in White had not "pursued a separate action to compel arbitration that might generate a conflicting interpretation of the arbitration agreement . . . ."). Here, Tate, jointly with The Blake, filed a motion to compel arbitration in the State Action, and therefore Tate has affirmatively asserted an interest in the subject matter of this litigation—an interest that poses a risk of inconsistent interpretations of the Arbitatration Agreement due to her absence in this action. Second, as already noted, Tough Mudder was decided after the cases on which the Blake plaintiffs rely. And following Tough Mudder, a court may properly find a non-joined party necessary and indispensable in a federal action to compel arbitration under the FAA when that party also seeks to compel arbitration in a related underlying state court action. Such is the case before the court, and the court therefore finds Tate necessary and indispensable to this action. The Blake plaintiffs' argument and citations to the contrary are unpersuasive. Because Tate's joinder destroys complete diversity between the parties, the Blake plaintiffs may not rely on 28 U.S.C. § 1332(a) to support this court's jurisdiction over the matter.

### B. 28 U.S.C. § 1331

The Blake plaintiffs alternatively argue that this court has federal-question jurisdiction over the matter pursuant to 28 U.S.C. § 1331. Specifically, the Blake plaintiffs argue that "Grimsley's own allegations in the [State Action] make numerous references to federal standards, rules, and regulations as to warrant this Court's exercise

9

of federal question jurisdiction." ECF No. 16 at 4.  Grimsley, on the other hand, argues that his mere reference to federal laws and regulations in the State Action complaint does not create federal-question jurisdiction.  The court agrees with Grimsley.

Article III of the United States Constitution provides: "The judicial Power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States[.]"  U.S. Const. art. III, § 2, cl. 1.  28 U.S.C. § 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  "Article III 'arising under' jurisdiction is broader than federal question jurisdiction under [28 U.S.C. § 1331]."  Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 495 (1983).  Although Congress has the power to prescribe the jurisdiction of federal courts under U.S. Const. art. I, § 8, cl. 9, it "may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution."  Id. at 491.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  As a general rule, federal question jurisdiction exists only if the complaint pleads a federal cause of action.  See Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808 (1986); Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004).  "In other words, the well-pleaded complaint rule generally bars federal jurisdiction where a plaintiff's complaint on its face states only state law causes of action, even though issues of federal law may be

involved." Fagin v. Gilmartin, 2007 WL 419286, at *3 (D.N.J. Feb. 1, 2007) (citation omitted).

If it is determined, however, that a federal cause of action is not present, this does not necessarily end the inquiry. In a "small class of cases," a complaint asserting a state law cause of action may nevertheless "arise under federal law" where "the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806 (4th Cir. 1996). The "mere presence" of a federal issue, however, "does not automatically confer federal-question jurisdiction." Merrell Dow, 478 U.S. at 813. Rather, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313 (2005). Even where a state claim involves a contested and substantial federal question, federal jurisdiction may still be improper if the exercise of such would not be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Id. at 313–14. Thus, the question to be resolved in determining whether to exercise federal jurisdiction over a state-law claim is whether such claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314. Any doubt on that score is resolved against the Blake plaintiffs, which bear the burden of establishing jurisdiction. Burrell v. Bayer Corp., 918 F.3d 372, 384 (4th Cir. 2019).

Grimsley does not assert a federal law cause of action in his complaint in the State Action. Grimsley simply relies in part on federal laws and regulations in his allegations to define the standard of care for Grimsley's state-law negligence causes of action. These references are not enough for the court to invoke federal-question jurisdiction. In other words, "[t]he fact that [Grimsley] rel[ies] in part on federal statutes and regulations to define the scope of the [d]efendants' duties under state law do[es] not necessarily render these claims as 'arising under' federal law." Whittington v. Morgan Stanley Smith Barney, 2012 WL 4846484, at *3 (W.D.N.C. Oct. 11, 2012). The federal issues in the State Action must be substantial and dispositive to federalize Grimsley's underlying claims. Other courts have found that the federal issues raised in state-law negligence claims are not substantial and dispositive where a plaintiff merely relies on federal laws and regulations to establish the relevant standard of care thereunder. See Merrell Dow, 478 U.S. at 808; Shawver v. Bradford Square Nursing, LLC, 2008 WL 2355803, at *5 (E.D. Ky. June 5, 2008) ("Although resolution of the Plaintiff's state law claims may require examination of federal law, the Court cannot conclude that this case involves a federal issue that is substantial and dispositive. While the Plaintiff has referenced federal Medicare and Medicaid statutes and regulations, he has done so simply to establish the relevant standard of care and to allege that the defendants breached that duty of care."); Fagin, 2007 WL 419286, at *6 ("The fact that a court may have to look to federal law to evaluate whether Defendants' alleged misconduct violated their state law obligations does not, in this case, elevate the federal law aspect of the alleged misconduct into a substantial question of federal law."); Pirie v. Broadview Multi–Care Ctr., 2008 WL 2745977, at *2 (N.D. Ohio July 11, 2008) (noting that "references to federal

regulations [in the plaintiff's complaint] are asserted in the context of an applicable standard of care, not an independent cause of action"); Sercye–McCollum v. Ravenswood Hosp. Med. Ctr., 140 F. Supp. 2d 944, 946 (N.D. Ill. 2001) (declining to find a substantial federal question where the plaintiff cited, inter alia, federal Emergency Medical Treatment and Active Labor Act in order to establish the applicable standard of care for a medical state-law negligence claim). Upon careful consideration of Grimsley's claims, and particularly the legal and factual issues raised thereby, the court concludes that the State Action is not one of the "small class of cases" that fits the bill for federal-question jurisdiction. Further, even if substantial and dispositive issues of federal law did exist in the State Action, the exercise of federal jurisdiction in this case would result in a significant transfer of state-law negligence claims to federal courts, thereby disrupting the balance of federal and state judicial responsibilities. See Grable, 545 U.S. at 314. The Blake plaintiffs have failed to demonstrate that the State Action "arises under" federal law for the purposes of subject matter jurisdiction under 28 U.S.C. § 1331. Accordingly, the Blake plaintiffs have not met their burden of showing federal jurisdiction exists over the matter. Because the court must dismiss the case for lack of subject matter jurisdiction, it need not—and indeed may not—reach the issue of whether the Arbitration Agreement is enforceable.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion and **DISMISSES** the action.

**AND IT IS SO ORDERED.**

                                                  **DAVID C. NORTON**
                                                  **UNITED STATES DISTRICT JUDGE**

**September 17, 2021**
**Charleston, South Carolina**